IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH D. BROOKS, | ) | Case No. 3:16-cv-2428 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHAE HARRIS, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I.      Introduction**

Petitioner Kenneth D. Brooks seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his convictions in *State v. Brooks*, Case No. CR2014 0079 violated his constitutional rights. ECF Doc. No. 1. Warden Chae Harris,[1] the respondent, has filed a return of writ. ECF Doc. 7. Brooks did not file a traverse.[2]

The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Brooks' petition or other case-dispositive motions. Because Brooks' constitutional rights were not violated by the state courts and his sole ground lacks merit I recommend that the Court DENY his petition.

---

[1] Chae Harris is the warden of Warren Correctional Institution, where Brooks is incarcerated. ECF Doc. 1 at Page ID# 1.
[2] On April 23, 2018, the court issued an order requiring Brooks to file his traverse by June 22, 2018. Brooks filed a "notice of appeal" on June 28, 2018. ECF Doc. 9. The court has considered this filing. However, the arguments asserted in this filing are the same or similar to those already raised in Brooks' petition.

## II. State Court History

### A. State Trial Court Conviction

An Allen County, Ohio grand jury issued an indictment on April 17, 2014 charging Brooks with one count of felonious assault and two counts of kidnapping. Count One charged felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1). Count Two charged kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2) and Count Three charged kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3). Each count included a repeat violent offender specification under Ohio Rev. Code § 2941.149. ECF Doc. 7-1 at Ex. 1, Page ID# 50-52.

Court appointed counsel represented Brooks throughout the trial court proceedings. ECF Doc. 7-1 at Ex. 2, Page ID# 54. On May 9, 2014, Brooks executed a limited waiver of his speedy trial rights for sixty days. ECF Doc. 7-1 at Ex. 3, Page ID# 55. He also waived his right to a jury trial and moved the court to consider the lesser included offense of aggravated assault. ECF Doc. 7-1 at Exs. 4 & 5, Page ID# 57-58.

Following a bench trial that commenced on August 7, 2014, the trial court found Brooks guilty on all three charges. ECF Doc. 7-1 at Ex. 6, Page ID# 65-67. On September 3, 2014, Brooks moved to merge allied offenses of similar import. ECF Doc. 7-1 at Ex. 7, Page ID# 68. The trial court merged the kidnapping convictions and the State elected to have Brooks sentenced on Count 3. ECF Doc. 7-1 at Ex. 8, Page ID# 75. The trial court sentenced Brooks to a mandatory eight years in prison for the felonious assault conviction; a mandatory four years in prison for the kidnapping conviction; and a mandatory four years in prison for the repeat violent offender specification. His prison terms were ordered to be served consecutively. His aggregate sentence was 16 years in prison. ECF Doc. 7-1 at Ex. 8, Page ID# 73-79.

### B. Direct Appeal – 3rd District Court of Appeals

New counsel was appointed for Brooks' appeal. ECF Doc. 7-1 at Ex. 9, Page ID# 80. On October 30, 2014, Brooks filed a notice of appeal in the Ohio Court of Appeals. ECF Doc. 7-1 at Ex. 10, Page ID# 81. Brooks' appointed counsel filed a motion for leave to withdraw and a brief stating that he reviewed the case and could not find any arguably meritorious issues to assert as error on appeal pursuant to *Anders v. California,* 386 U.S. 738 (1967). ECF Doc. 7-1 at Ex. 11, Page ID# 83-97. Counsel stated that the trial court record and transcripts did not support the potential errors. However, he identified two potential errors in his brief:

1) The Defendant received ineffective assistance of counsel.

2) The trial court erred in finding the defendant was not acting under the influence of sudden passion.

ECF Doc. 7-1 at Ex. 11, Page ID# 89. The court of appeals notified Brooks that an *Anders* brief had been filed. ECF Doc. 7-1 at Ex. 12, Page ID# 101.

Brooks filed a *pro se* merit brief on May 6, 2015 raising the following arguments:

1) Brook's convictions on Counts 1 & 3 are based on insufficient evidence.

    a. Whether the trial court erred in not finding that defendant acted under the influence of sudden passion that would have required an aggravated assault conviction and not a felonious assault.

    b. Whether the trial court erred in convicting Brooks of kidnapping when the evidence was insufficient as a matter of law to sustain the conviction.

ECF Doc. 7-1 at Ex. 13, Page ID# 103. On July 29, 2015, the court of appeals dismissed Brooks' appeal as frivolous and affirmed his convictions and sentences. ECF Doc. 7-1 at Ex. 14, Page ID# 114.

### C. Appeal to the Supreme Court of Ohio

On December 3, 2015, Brooks filed an untimely *pro se* notice of appeal and motion for leave to file a delayed appeal in the Ohio Supreme Court. ECF Doc. 7-1 at Ex. 15 & 16, Page

3

ID# 116, 118. On January 20, 2016, the Ohio Supreme Court granted the motion for leave to file a delayed appeal. ECF Doc. 7-1 at Ex. 17, Page ID# 133. Brooks' memorandum in support of jurisdiction raised one issue:

> Proposition of Law No. 1:
> The trial court erred in convicting defendant of felonious assault and kidnapping when evidence was insufficient as a matter of law to sustain the conviction.

ECF Doc. 7-1 at Ex. 18, Page ID# 135. On May 4, 2016 the Ohio Supreme Court declined jurisdiction. ECF Doc. 7-1 at Ex. 19, Page ID# 141. Brooks did not appeal to the United States Supreme Court.

### D. Post-Conviction Relief

On August 4, 2016, Brooks filed a motion to "correct a void judgment" in the trial court. ECF Doc. 7-1 at Ex. 20, Page ID# 142. Brooks argued that the trial court had failed to advise him of community service requirements that could be imposed if court costs were not paid. *Id.* The trial court overruled Brooks' motion on August 9, 2016. ECF Doc. 7-1 at Ex. 21, Page ID# 145-146. Brooks did not file an appeal in the Ohio Court of Appeals, and his appellate filing deadline expired September 8, 2016. Ohio App. R. 4(A)(1); Ohio App. R. 14(A).

### E. Federal Habeas Corpus Petition

Brooks filed his *pro se* petition for writ of habeas corpus in this Court on October 3, 2016. ECF Doc. 1. Brooks' petition raises one ground for relief:

> **GROUND ONE**: Petitioner's convictions on count 1 & 3 are barred based on insufficient evidence.
>
> Whether the trial court erred in not finding that petitioner acted under the influence of sudden passion that would have required an aggravated assault conviction and not a felonious assault.
>
> Whether the trial court erred in convicting petitioner of kidnapping when the evidence was insufficient as a matter of law to sustain the conviction.

4

*Id.*, Page ID# 3.  On January 3, 2017, Warden Harris filed a return of writ.  ECF Doc. 7.  On April 23, 2018, the court issued an order noting that Brooks had not filed a traverse and establishing a final deadline of June 22, 2018.  On June 28, 2018, Brooks filed a "notice of appeal" which I reviewed before issuing this report and recommendation.  ECF Doc. 9.

**III.     General Standards of AEDPA Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Brooks' petition for writ of habeas corpus.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences…and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

Petitions for habeas corpus relief under AEDPA are governed by the statute of limitations set forth in 28 U.S.C. § 2244.  Because Warden Harris makes a statute of limitations argument for dismissal of Brooks' entire petition, I have made a detailed review of the applicable law pertaining to the statute of limitations and its application to this case.

AEDPA "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights."  *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*.  One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

5

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on

a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order to have an unreasonable application of clearly established Federal law, the state-court decision must be 'objectively unreasonable,' not merely erroneous or incorrect. This standard requires the federal courts to give considerable deference to state-court decisions. *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) (citation omitted). AEDPA essentially says to federal courts, 'Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.' *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)." *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774 (6th Cir. 2008) (internal quotation marks omitted).

A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). As noted above, a habeas petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. The Court has admonished that a reviewing court may not

7

"treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103. This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

**IV.     Analysis and Findings**

    **A.     Statute of Limitations**

Warden Harris argues initially that the AEDPA statute of limitations bars all of Brooks' grounds for relief. Under 28 U.S.C. § 2244(d)(1), a state prisoner must file a habeas corpus petition within one year from the latest of four circumstances:

> (A) the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

8

>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, the court's first task is to decide the statute of limitations commencement date.

Warden Harris contends that § 2244(d)(1)(A) applies. In § 2244(d)(1)(A) analysis, "direct review" of a petitioner's conviction includes review by the United States Supreme Court. *Lawrence v. Florida,* 549 U.S. 327, 333 (2007); *Clay v. United States,* 537 U.S. 522, 527-528 (2003); *Bronough v. Ohio,* 235 F.3d 280, 283 (6th Cir. 2000). Pursuant to Sup. Ct. R. 13, a criminal defendant has 90 days following the entry of a judgment by the "state court of last resort" in which to file a petition for a writ of certiorari. Thus, Brooks' § 2244(d)(1)(A) one-year statute of limitation began to run when the time for filing a petition for a writ of certiorari for direct review in the United States Supreme Court expired, 90 days after the state supreme court's decision not to take his case.

Here, Warden Harris asserts that the Ohio Supreme Court denied Brooks' discretionary direct appeal on May 5, 2015. ECF Doc. 7-1 at Ex. 19, Page ID# 141. And the warden points out that Brooks did not file a petition for a writ of certiorari in the United States Supreme Court "by his August 3, 2015 filing deadline." ECF Doc. 7, Page ID# 30. If that were true, Brooks' AEDPA statute of limitation would have begun running the next day, August 4, 2015 and expired one year later on August 3, 2016. But the warden's basic fact is misstated. As noted in the case history above, p. 4 *supra*, the Ohio Supreme Court declined to exercise jurisdiction on May 4, 2016. ECF Doc. 7-1, Exhibit 19, Page ID# 141. Brooks' deadline to file a petition for writ of certiorari in the United States Supreme Court was ninety days later, August 2, 2016.

9

Brooks had one year from that date to his habeas petition.  Plainly, Brooks timely filed his October 3, 2016 habeas petition.

I recommend the court overrule Warden Harris' statute of limitations defense.

**B.     Merits Review – Insufficient Evidence Argument**

In addition to making a statute of limitations argument, Warden Harris also argues that Brooks' Ground One insufficiency of evidence claim fails on the merits.

Brooks asserts that there was insufficient evidence to convict him of kidnapping and felonious assault.  Specifically, he argues that the trial judge should have found him guilty on Count One of the lesser included offense of aggravated assault, and he contends that there was insufficient evidence on the Count Three kidnapping conviction.  In his recent "notice of appeal," Brooks asserts the same or similar arguments to those raised in his habeas petition.  ECF Doc. 9.

Federal habeas review is available for insufficient evidence arguments.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  States have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456 U.S. 107 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states from convicting "without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  (Emphasis in original)  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence

10

decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Brooks' sufficiency claim, federal habeas review requires deference at two levels. "First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA." *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively unreasonable," this court necessarily engages in a two-step analysis. First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if the panel determines that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Brooks elected to waive a jury and have his case tried to the court. The trial court explained its findings on the felonious assault and kidnapping charges on the record:

> Now, the court would indicate that the matter was taken under advisement by this court last Thursday, the 7th day of August 2014. The court felt that it was very important in as much as the element of the nature particularly of the serious physical harm to a person would include a study associated with the rather extensive medical records that the court felt it had to review or but for those the court would have been in a position to make an order of adjudication of guilt or otherwise last Thursday. So in fairness to everybody and considering all the evidence, the exhibits, including the exhibits, as well as the arguments of counsel, the court will make the following order.

11

As to Count 1, that being the charge of felonious assault, the court finds that and determines that on the 21st day of February 2014 in Allen County, Ohio Kenneth D. Brooks did knowingly cause serious physical harm to another, particularly and to wit: April Fugatt. Therefore the defendant will be found guilty of the felonious assault.

When I took this job I made it clear to myself when I make determinations on cases I was going to explain my reasoning for the same to some extent and I feel recognizing that this was a trial to the court, that certain specific indication with respect to the circumstances of this matter should be considered.

I first of all want to address serious physical harm to persons, as more particularly defined in Ohio Revised Code 2901.01(A)(5).

First and foremost is subsection (A) which indicates a condition requiring hospitalization. There can be little or no question in anyone's mind upon considering the records that I reviewed and the testimony that April Fugatt required hospitalization. Her injuries were extremely serious relating to the pneumothorax, also known as collapsed lung, and as many as four (4) broken ribs, an abundance of bruising, contusions, abrasions, and the pain and suffering that she experienced was significant.

I will not get into detail associated with rib injuries that I have familiarity with. But in this situation they were devastating to the extent that there was punctured lungs. And I found it extremely interesting from the medical records that there were daily diagnostic procedures performed virtually throughout the seven (7) day admission at Lima Memorial – Memorial Hospital for determination if there was escape of air from her lungs relating to the pneumothorax or escaping air from her lungs into her chest cavity independent of her lungs. And I frankly don't know what the hospital bill was, but there were almost daily x-rays and cat scans to determine that.

We also heard, pursuant to part (B) of 2901.01(A)(5) the indication of the substantial risk of death that was reported by Dr. Heffner. The court believes that was the case and he indicated so with respect to his testimony.

There's also, pursuant to part (C) of 2901.01(A)(5) indication of clearly a temporary substantial incapacity that April Fugatt received.

And pursuant to part (D) permanent disfigurement with the scar particularly in her right rib area that was referenced. And as I've heard said over the years once a scar, always a scar. That's the first area I want to address per – pertaining to the felonious assault for which I found the defendant guilty.

Secondly, there's the question raised with regard to the aggravated assault, the felony of the 2nd degree. For an aggravated assault to be determined there's some important language in that statute. There has to be a sudden onset of passion, sudden passion, pursuant to Revised Code 2903.12. The court does not view this situation to fit the definition of sudden passion.

12

There is indication completely from the evidence, not refuted to any particular extent, that when Mr. Brooks awakened on the day of the incident he had considered immediately the fact that his money was missing. Also of interest is there's been a history of this and clearly a history of discord between the two parties.

Mr. Brooks then tried to contact Ms. Fugatt by phone and Ms. Fugatt returned the phone – did not accept the phone calls. I can't remember the exact wording she used but there was a button on her phone that would indicate she would not accept them or they could not be passed through to her. All the while this is occurring the defendant is pondering the situation and is angry. And when he goes over to the address on Summit with Alexis Armer, he's angry.

One can easily tell upon his arrival at Summit that – you can actually hear from the tapes, which have been, again reviewed as part of the evidence – that the anger persists and that you, as I say, you can hear the knocking. And of course April Fugatt made it very clear that her situation was one of fright all the while this is taking the time that puts this outside the realm of an aggravated assault of Revised Code 2903.12.

The court also would note there was the trip upon the persuasion of April that turned out to be deception and a lie that she would not be harmed. There was the trip back from Summit to Orena, which the court would recognize would have taken some time and the anger between the two, and particularly Mr. Brooks' anger with her continued to persist, made it very clear from the testimony of Ms. Fugatt, as well as the testimony from Ms. Armer. That was also emphasized that – the point was emphasized that Ms. Fugatt got in the car because the defendant swore on "Big A" that he would not hurt the defendant. One can obviously see the buildup of anger that was ongoing or the continuation of the anger that was ongoing all the while Mr. Brooks was driving back to the Orena address from the Summit Street address.

The court believes that this is not part of what would constitute an aggravated result simply because there was no sudden passion, no sudden fit of rage. The rage was ongoing. The passion was ongoing for quite a time that an individual could reflect upon the situation between the time that Mr. Brooks found his money had been stolen by Ms. Fugatt and the time when the incident actually occurred for which the defendant is being found guilty on the felonious assault.

With respect to Count 2 – and to that extent, excuse me, the motion for determination made for the aggravated assault is overruled.

As to Count 2, the court finds that on February 21, 2014 in Allen County, Ohio defendant Kenneth Brooks did by deception remove another from the place where the person was found or restrained the liberty of another person with purpose to facilitate the commission of a felony, to-wit: felonious assault.

13

> The court has already addressed the promises that were made and the deceit, the lying, associated with what it took to remove April from the Summit Street address back to the Orena Street address. The court does not believe that this was a consensual activity to any extent once the deception was pulled off, as April was extremely concerned about her well-being, as emphasized by the phone calls – that weren't actually phone calls – but the pull up of the 911 emergency number and what could be overheard on the recordings and the same was clearly confirmed by Ms. Armer. Therefore, the court believes the defendant is guilty as indicated as to Count 2 of the indictment.
>
> As to Count 3, the court will find the defendant guilty in that on or about the 21st day of February 2014, in Allen County, Ohio, the defendant did by deception remove another from the place where the other person was found or restrained the liberty of the other person with purpose to terrorize or inflict serious physical harm on the victim.
>
> This situation, once the devastating assault and battery took place or the preliminary aspects of the assault and battery were included with the conduct that hurt April Fugatt to the extent that's been referenced, she managed to get away for a certain period of time, very short albeit, and was put back together, as to use the language that was used by Ms. Armer, and Ms. Armer had told her to run. And it was obvious why. I've already referenced the nature and extent of the serious physical harm. She trips, goes into the side of a vehicle that was precipitated by the conduct that previously had occurred, and pulled back by her hair into the house. The second kidnapping activity that was involved in this entire set of circumstances.
>
> I want to make it clear therefore that the Defendant will be found guilty on all counts.
>
> I want to also make it clear that I am mindful of Ms. Fugatt's indiscretions. But nevertheless those circumstances do not come into consideration with respect to the adjudicatory phase of this case, that is whether or not the Defendant should be found guilty or not guilty of the respective charges.
>
> So, the court will find the Defendant's been proven to be guilty beyond a reasonable doubt of all three (3) counts in the indictment.

ECF Doc. 7-4, Page ID# 591-598.

After viewing the evidence in a light most favorable to the prosecution, I find that a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. In fact, the trial court provided a reasonable explanation for its findings –

14

making it very difficult for Brooks to show that no rational trier of fact could have made these findings.

Brooks argues that the trial court should have found that he acted under the influence of sudden passion, which would have required a finding that he was guilty of aggravated assault rather than felonious assault. However, the trial judge provided a rational explanation for his finding that Brooks was not acting under the influence of sudden passion. He reasoned that Brooks had realized that the victim took his money when he awakened and that she had done this many times before. A significant amount of time passed before Brooks was able to find the victim and persuade her to come with him by telling her that he was not going to harm her. He then drove her back to their house. The court reasoned that Brooks' anger toward the victim was building over this period and that the assault on her was not the result of a sudden passion. These facts were largely undisputed and the trial court's finding - that the evidence did not support a finding of "sudden passion" – was not irrational.

The trial court's finding that Brooks' assault was not the result of a sudden passion was not irrational. But the real question raised by Brooks' insufficient evidence ground is whether sufficient evidence supported the elements of the crimes of which Brooks was convicted. Brooks was charged with felonious assault pursuant to Ohio Rev. Code § 2903.11(A)(1) which provides that "[n]o person shall knowingly cause serious physical harm to another…" Under Ohio Rev. Code § 2901.01(A)(5), serious physical harm means any of the following:

    a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

    b) Any physical harm that carries a substantial risk of death;

    c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

  d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

  e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

The trial court found that the evidence had established serious physical harm under subsection (a) because the victim's injuries were serious and she was in the hospital for a week. The evidence at trial established that the victim had four broken ribs and a punctured lung. Her physician indicated that she arrived at the hospital with life threatening injuries. ECF Doc. 7-4, Page ID# 229, 359, 592-593.

  The trial court also found that the evidence established serious physical harm under subsection (c) because the victim had been temporarily and substantially incapacitated; and under subsection (d) because she had a permanent scar from a chest tube that was quickly inserted to treat her collapsed lung. ECF Doc. 7-2&4, Page ID# 360, 593.

  Brooks testified that he knocked the victim down and started kicking and hitting her. ECF Doc. 7-3, Page ID# 502. The evidence established that the victim suffered serious physical harm as a result. The trial court's determination that Brooks knowingly caused serious physical harm to the victim was a rational finding. Brooks has not shown that there was insufficient evidence to support the felonious assault conviction.

  Brooks also argues that there was insufficient evidence to support the kidnapping conviction. Brooks was charged with two counts of kidnapping under Ohio Rev. Code § 2905.01(A)(2)&(3). The court granted Brooks' motion to merge the kidnapping counts and the State elected to proceed on Count Three – for violation of Ohio Rev. Code § 2905.01(A)(3). Ohio Rev. Code § 2905.01(A)(3) provides that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the

other person, for any of the following purposes: *** (3) to terrorize, or to inflict serious physical harm on the victim or another."

The trial court had already explained that the evidence established serious physical harm to the victim. ECF Doc. 7-4, Page ID# 592. The court further explained that, pertaining to Count Three, the evidence established that Brooks used force to pull the victim back into the house by her hair after she tried to escape. ECF Doc. 7-4 at Ex. 46, Page ID# 597, 599. Brooks testified that the victim started to run; that he went after her, grabbed her and pulled her into the house. ECF Doc. 7-3, Page ID# 502. The victim testified that, after she was in the house, Brooks kicked her again and told her to get a shower. ECF Doc. 7-2, Page ID# 355. The trial court's determination that Brooks used force to remove the victim from the place where she was found to terrorize, or to inflict serious physical harm on her was not irrational. Brooks has not shown that there was insufficient evidence to support the kidnapping conviction.

The court of appeals declared Brooks' appeal frivolous but, in regard to Brooks' insufficiency arguments, the court noted:

> Additionally, the record reveals no reversible error regarding the trial court's finding of appellant guilty of felonious assault instead of the inferior-degree offense of aggravated assault. The trial court found, and the record reflects, that there was evidence from which the trial court could reasonably conclude that appellant was not acting under a sudden passion or a sudden fit of rage in that appellant could reflect on the situation between the time he found his money had been stolen by the victim and the time that the incident had occurred. See *State v. Mack,* 82 Ohio St.3d 198, 1998-Ohio-375. The assignments of error are, therefore, without merit and no arguable issue for appeal exists.
>
> * * *
>
> Likewise, there is no arguable merit in appellant's other proposed issue as the record reflects that the trial court had sufficient evidence before it to satisfy all of the elements of kidnapping by deception or force. See *State v. Jenks,* 61 Ohio St.3d 259 (1981), paragraph two of the syllabus. For example, the evidence presented at trial indicates that the victim was scared of appellant, but appellant's promises not to hurt her deceived her into leaving the house she was on Summit Street and getting into the car with him. Appellant then drove to the house he

17

shared with the victim on Orena Street where the victim was physically assaulted by the appellant outside the house. The evidence further indicates that appellant chased and caught the victim when she attempted to run away, and her terror was evident. Evidence also indicates that appellant was witnessed dragging the victim back by her hair into the house. Accordingly, we find no merit in the pro se brief.

ECF Doc. 7-1, Page ID# 114.

Brooks' argument that there was insufficient evidence to convict him of felonious assault and kidnapping lacks merit. Both the trial court and the Ohio Court of Appeals concluded that the evidence was sufficient. This court must defer to those findings. Even if deference weren't required, the court cannot say that no rational jury could have found Brooks guilty of felonious assault and kidnapping on the evidence presented. To the contrary, the evidence described in the record was sufficient. Although Brooks timely filed his petition for habeas relief, I recommend that it be dismissed because a rational trier of fact could have – and did – find that Brooks was guilty of felonious assault and kidnapping and the state court of appeals reasonably determined that there was sufficient evidence to support these convictions. Brooks' constitutional rights were not violated in any state court proceeding brought to the attention of this court.

## V.     Recommendation Regarding Certificate of Appealability

### A.     Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts

that have considered the issue have concluded that "[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further." *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. Analysis**

For claims dismissed on the merits, a Certificate of Appealability may only issue when a movant has made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. at 484; *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting

19

requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).

Here, given the substance of Brooks' sole ground for relief and the thorough vetting of petitioner's arguments and constitutional rights in the state courts and above, reasonable jurists could not find the assessment of Brooks' constitutional rights to be debatable or wrong, and the Court should conclude that Brooks is not entitled to a certificate of appealability.

VI. **Recommendations**

I recommend that the court overrule Warden Harris' statute of limitations defense. However, because Brooks' insufficiency argument lacks merit, I recommend that the Court deny and dismiss Brooks' petition for a writ of habeas corpus under 28 U.S.C. § 2254 in its entirety. I further recommend that Brooks not be granted a certificate of appealability.

Dated: July 13, 2018

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).